

FILED
SUPERIOR COURT
OF GUAM

2019 APR 29 PM 4:41

CLERK OF COURT

BY _____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| RODRICK M. WILSON, II,<br><br>                         Plaintiff,<br><br>    vs.<br><br>JENNIFER J.V. WILSON now known as<br>JENNIFER J.C. VILLAGOMEZ,<br><br>                     Defendant. | Case No. DM0381-09<br><br>**DECISION AND ORDER** |

### INTRODUCTION

Plaintiff disputes the Referee's decision that he should pay child support arrears for the time period after he filed the divorce complaint, and he argues that the Office of the Attorney General lacks standing. This matter is before the Honorable Michael J. Bordallo. Plaintiff Rodrick M. Wilson II ("Plaintiff") is represented by Attorney Delia S. Lujan Wolff of Lujan & Wolff LLP. Defendant Jennifer J.V. Wilson, now known as Jennifer J.C. Villagomez ("Defendant"), appears to be unrepresented. The Office of the Attorney General, Child Support Enforcement Division (the "AG") is represented by Assistant Attorney General Elizabeth T. Cruz, and has appeared as an interested third party on behalf of Defendant. Having considered the arguments and the applicable law, the Court hereby **OVERRULES** Plaintiff's objections.

## BACKGROUND

On June 18, 2018, Referee B. Ann Keith issued a Findings and Recommended Order ("Findings"). The instant matter arises out of Plaintiff's objections ("Objections") to the Findings, filed Feb. 8, 2019. Defendant did not file any responsive pleading to the Objections.

## FACTS

1. The parties were married on Nov. 20, 2006, and they separated eleven months later in Oct. 2007.

2. Two months after that, Defendant gave birth to the only child of the marriage, R.M.W. (DOB 12/16/2007).

3. When the child was eighteen months old, in June 2009, Plaintiff filed a complaint for divorce ("Complaint") on grounds of extreme cruelty.

4. A Final Decree of Divorce was entered on Nov. 27, 2009, and it incorporated the Interlocutory Judgment of Divorce of the same date.

5. The Interlocutory Judgment of Divorce contained no provision for child support.

6. A delay of several years ensued in which very little was filed in the case, including a period during which Plaintiff was deployed to Iraq and later substituted counsel.

7. On Aug. 5, 2014, Plaintiff requested a hearing on child custody.

8. The following week, on Aug. 13, 2014, the AG entered an appearance on behalf of Guam for the purpose of providing child support enforcement services.

9. Two months later, at a hearing on Oct. 20, 2014 ("Oct. 20 Hearing"), Plaintiff informed Referee Linda L. Ingles that he, Plaintiff, had been paying $200 per month to Defendant in child support since 2009, not by court order, but simply at Defendant's request. The dialogue at the hearing proceeded as follows:

Plaintiff: Your Honor, we request that—that Mr. Wilson resume payments on the two, on two hundred dollars monthly. He's been paying that amount at the very least since 2008, or about 2009, Your Honor, once he left Guam, and that was at the request of Ms. Wilson. He's not, he just moved back to Guam and he does not have employment yet. He would like to begin school over at UOG in January. So, we're just asking right now that the temporary amount be two hundred dollars, which he can begin in November. And we also need time to review this information. We've also seen no documents to support any income information for Ms. Wilson.

Court: Where was he employed before?

Plaintiff: He was in the Army. He does receive retirement, monthly retirement of one thousand dollars.

Court: So I'm wondering where the government picked up this figure.

Plaintiff: (unintelligible)

Court: I don't think somebody who's retired from the army would have, would be a new hire, would they?

Defendant: This might have been, this might be more accurate for his arrears, Your Honor. That's my guess. So maybe this will be a good base for his arrears amount.

Court: Yeah, I don't know if it's accurate. Perhaps he could provide some income information to counsel so that we can determine if it's accurate.

Defendant: That's fair. You know, his monthly payments of two hundred were very sporadic over the years. He was clearly underpaying. So we request that the court order him to provide us with income documents from '07 to his most current income documents.

Plaintiff: Your Honor, we request the same of Ms. Wilson. We would like a copy of her tax returns. It's my understanding that she does work as a realtor.

Defendant: We'll gladly do that, Your Honor.

Court: Okay, so each exchange your documents.

Plaintiff: We also dispute the, I guess the allegation that his payments were sporadic. Mr. Wilson's been paying it monthly until I believe it was—his last payment was in April of this year.

Court: The matter will be continued on Nov. 10 at 3:00.

Defendant: So Your Honor, temporary child support, is there a chance we could get some kind of payment started?

Court: I think at this point we'll leave it at the two hundred. I—with no income, I don't know what the proper imputations should be. So we'll see. That's just three weeks.

Hr'g Oct. 20, 2014.

10. During the Oct. 20 Hearing, Defendant also stated that she wanted Plaintiff to pay child support arrears retroactive to the birth of the child, who by then was nearly seven years old. As a result, Referee Ingles ordered the parties to exchange income information for the previous seven years.

11. In spite of Referee Ingles's assurance that the order for $200 monthly would last only three weeks, a permanent order was never entered. For a variety of reasons, to this day, the $200 monthly payment remains the only child support order ever made in this case.

12. Defendant's presence in this case has been limited. At times she has not attended hearings or responded to Plaintiff's pleadings, at times she has appeared pro se, and at times she has been represented by counsel. Since 2014, the principal adversary to Plaintiff's interests has been the AG, with relative quiet from Defendant.

13. Since the Oct. 20 Hearing, Plaintiff and the AG have repeatedly disputed about what amount, if any, Plaintiff should have to pay in retroactive child support. The dispute focuses on the interpretation of two child support statutes: 5 GCA § 34105 and 5 GCA § 34116.1. These statutes will be addressed later in this decision.

14. The Findings state that arrears can apply retroactive to the date of the child's birth if a child support action is commenced before the minor turns six, in agreement with several Superior Court of Guam decisions that also interpret § 34105. Therefore, Referee Keith concluded, Plaintiff should owe child support arrears dating back from the Oct. 20

Hearing to the birth of the child, unless, under § 34116.1, Plaintiff can successfully argue why he should be relieved of this statutory obligation.

15. The Findings also align with Superior Court of Guam decisions that find that § 34116.1 does not create a statute of limitations for child support under any analysis.

16. The Findings do not require arrears for the period between the Oct. 20 Hearing and Oct. 2017. Instead, Plaintiff is held responsible for a total of only $200 per month in child support during that period, based on the order made at the Oct. 20 Hearing. The Findings state that no arrears are available during that period because there was no motion to modify the amount until Oct. 2017.

17. In sum, the Findings require arrears to be paid retroactively for the period between the child's birth and the Oct. 20 Hearing, followed by a gap of three years in which no arrears are required, followed by a period during which arrears are again required, between Oct. 2017 and the present.

18. The parties do not yet agree as to their respective incomes, so although the Findings state the periods during which arrears should be required, no updated amount for child support has been set.

19. Plaintiff objects to the Findings and argues that arrears cannot be required of Plaintiff for any period after he filed the Complaint. First, Plaintiff argues that at the time of the Oct. 20 Hearing, the judge could have ordered child support arrears nunc pro tunc to one year before the hearing, under § 34116.1. But because the judge didn't at that time, Plaintiff argues that § 34116.1 no longer applies to the matter at all. This is because § 34116.1 applies only when making the first child support order, according to Plaintiff. If the first order is made without simultaneously ordering arrears, the arrears provisions of § 34116.1 become obsolete, and any arrears are no longer an option. As a result, Plaintiff

continues, all adjustments to the child support order made after the Oct. 20 Hearing can apply only prospectively, not retroactively. Plaintiff adds that even if this Court determines that Plaintiff can be required to pay arrears, those arrears can date back only one year. For example, under Plaintiff's argument, if a new child support order were entered in May 2019, it could apply retroactively only one year, to May 2018.

20. Second, Plaintiff accepts that arrears can be required of him under § 34105(a)(8), but only during the period between the birth of the child and the Complaint. Under Plaintiff's argument, § 34105(a)(8) does not apply to the period after the Complaint was filed. Instead, § 34116.1 would be the applicable statute for child support arrears after the Complaint. However, as stated earlier, Plaintiff has argued that § 34116.1 became inapplicable once the court made the $200 support order without ordering arrears.

21. In conclusion, under Plaintiff's argument, Plaintiff can be held responsible for child support arrears that accumulated before he filed the Complaint but for no other arrears. Or, Plaintiff concedes, if post-Complaint arrears are available, they are available only for a period not exceeding one year from the time a new order is entered.

22. In addition, Plaintiff argues that the AG lacks standing in this case. Section 34105(a) lists nine scenarios in which the AG is permitted to bring or join an action against a person responsible for the support of children. Plaintiff contends that none of the scenarios match the facts in the instant case and therefore, the AG lacks standing.

23. In general, the parties appeal to § 34105 and § 34116.1 to attempt to resolve the child support arrears issues in this case. The two statutes are not always clear, and the courts have not always agreed on the proper interpretation of the statutes. The tension between the statutes raises several unresolved questions, some applicable to the instant matter, and all interrelated. One question is whether post-complaint child support arrears can be

ordered back to the date of the complaint, even if that is a period of several years, or if the arrears can be ordered only for one year. A related question is whether the length of time arrears can be ordered is influenced by whether the child has yet turned the age of six. Another question is whether § 34116.1 creates a statute of limitations at all for child support arrears. Another question is whether child support arrears are still available after a support order has been entered that did not require arrears. Another question is whether the statute created or amended most recently is the controlling statute or the statute that is most specific. Additional questions arise with answers to any of the above questions. Although these and similar questions are highly interrelated, this Court will address only those specific issues that will resolve the instant case.

24. The matters are now before the Court.

## ISSUE

1.  Whether Plaintiff should be responsible to pay child support arrears for any period after the Complaint was filed.

2.  Whether the AG has standing to initiate an action seeking child support for the period after the Complaint is filed.

## PRINCIPLES OF LAW

The first issue before this Court is the appropriate standard of review. In 2008, the Supreme Court of Guam adopted a "pragmatic approach," requiring the trial court to "make a good faith effort to supervise the referee and correct any obvious errors." Lamb v. Hoffman, 2008 Guam 2 ¶ 41; see also Palomo v. Manglona, 2012 Guam 18 ¶ 23 (explaining that an in-depth review of the referee's recommendation before ratification would be imprudent). In 2014, the Supreme Court of Guam held that no additional time limitation is imposed on the Superior Court for its review when, pursuant to the Guam Rules of Expedited Process, a party files an

objection to the referee's findings and recommended order within ten days of the date of the recommendation. Harper v. Harper, 2014 Guam 9 ¶¶ 10-16. Given this history and the Court's prior precedential review of similar matters, the Court will review the Referee's Findings and Recommended Order for obvious error. See Palomo.

As stated previously, two apparently competing child support arrears statutes are at issue in the instant matter. The first statute is 5 GCA § 34105, which reads:

> § 34105. Action.
> (a) *I Liheslaturan Guåhan* [The Guam Legislature] has determined there is public policy in favor of establishing paternity, of having parents support their children, and in having fair and equitable support orders. Therefore, whether or not the minor children have been or are recipients of public assistance, the Department acting in the best interests of the children and the Island of Guam, may bring an action in its own name or join in an action already in existence against the person or persons responsible for the support of such children:
>
> …
>
> (7) to recover necessary expenses incurred by or for the mother in connection with the birth of her child, for the funeral expenses if the child has died, for expenses incurred in connection with pregnancy of the mother, except as limited by (b) of this Section;
> (8) to recover reimbursement of the cost of support for the child before the commencement of the action, determined by using the appropriate Child Support Guidelines currently in effect, except as limited by (b) of this Section;
>
> …
>
> (b) If an action is commenced after the lapse of more than six (6) years from the birth of the child, an amount shall not be awarded for expenses or support under (a)(7)-(8) of this Section that accrued before the date on which the action was commenced unless one (1) or more of the following circumstances exists:
>
> (1) Paternity has been acknowledged by the father in writing in accordance with applicable statutes.
>
> (2) The non-custodial parent is out of the Island of Guam, was avoiding service of process, or threatened or coerced the custodial parent not to file an action during the six (6) year period. The court may award an amount for expenses or support that accrued before the date the action was commenced if the action was commenced during a period of time equal to the sum of six (6) years and the time the non-custodial parent was out of the Island of Guam, was avoiding service of process, or threatened or coerced the complainant not to bring an action under this Chapter.

5 GCA § 34105(a)-(b).

The other child support arrears statute in this matter is 5 GCA § 34116.1. It states that in any action for child support filed after the date of the statute's inception (1994), if no temporary or permanent child support order has yet been made in the case, "the court may in such cases enter an order for child support effective nunc pro tunc to the date of the filing of the complaint, but not exceeding one (1) year." 5 GCA § 34116.1. The statute then states that reasonable provisions must be made for the payment of the ordered child support and the obligor parent may object to such a child support order on grounds that he would have been unable to pay some or all of the child support during that period. Id.

The Supreme Court of Guam has stated that there is a "clear policy that parents, whether married or not, must support their children and that child support awards reflect the best interests of the children." Palomo v. Manglona 2012 Guam 18 ¶ 33. The Palomo court held that if a child support action is commenced within six years of the child's birth, reimbursement from the child's birth to the time of the action should normally occur, under § 34105. In so holding, the court said, "[W]e join those courts which recognize that a child's needs begin at birth and that the father of a child is under an obligation to support the child whether or not there has been a prior adjudication of paternity." The Palomo court then references an array of cases from various jurisdictions that emphasize a father's duty to provide for his children retroactive to their birth, regardless of when paternity was adjudicated in the cases. In one of those cases, Ellison v. Walter ex rel. Walter, that court stated, "The establishment of paternity by judicial decree is merely a procedural prerequisite to enforcement of the duty of support owed to the child: it does not create, but only defines the preexisting duty." Ellison v. Walter ex rel. Walter, 834 P.2d 680, 684 (Wyo. 1992). In Palomo, the Supreme Court of Guam also stated, "We disagree with any interpretation of 5 GCA § 34105 that would create an incentive for men to avoid their obligations by delaying the determination of paternity and that would be

contrary to the statutory purposes of providing for the child regardless of the circumstances of birth." Palomo at ¶ 42. The court added that requiring child support of a father beginning on the date when he knows for certain that the child is his, but not requiring arrears prior to that date, would "encourage putative fathers to delay paternity testing in order to minimize the ultimate child support award." Id.

Both the Supreme Court of Guam and the Superior Court of Guam as a reviewing court have issued decisions that lend some guidance but also leave unanswered questions in interpreting the apparently competing provisions of § 34105 and § 34116.1. The Supreme Court of Guam has stated that in cases in which a child has not reached age six, there is a rebuttable presumption in favor of awarding child support arrears from birth to the commencement of the action. Id. at ¶ 33. However, the trial court has discretion to deny reimbursement if the obligor parent can show why he should be relieved of the obligation. Id. If the action is commenced after a child has turned six and paternity is not in dispute, several Superior Court of Guam decisions share a consensus that § 34116.1 creates a statute of limitations, and "the amount of time a custodial parent may seek back support is limited to the filing of the complaint or one year, as controlled by 5 GCA § 34116.1." Haddad v. Peter-Haddad, Superior Court of Guam Case No. DM0476-08, Decision and Order, (Dec. 29, 2014); see also, Tolerson v. Tolerson, DM0220-12, Findings and Recommended Order, (July 31, 2014); Oderiong v. White, CS0224-13, Findings and Recommended Order, (Sep. 15, 2014). At least two Superior Court of Guam decisions present a different view. In Lujan v. Pangelinan, the court stated that § 34116.1 is "not a statute of limitation under any analysis." Lujan v. Pangelinan at 4, Superior Court of Guam Case No. CS0012-09, *Recommended Decision & Order* (Mar. 9, 2011). Rather, the court held that the sole purpose of the statute was to allow an obligor parent to refute the assumption that he could have paid child support during the period between the filing of the complaint to the

date the child support order is entered. In Lujan, the child had not turned age six at the time of the commencement of the action, but it is not clear that the age of the child influenced the decision. The court reiterated the conclusion from Lujan in Stahl v. Stahl, where the minor also had not turned six by the commencement of the action, but again, it is not clear that the court considered the child's age to be relevant to the court's conclusion, which was that § 34116.1 in no way established a statute of limitations. Stahl v. Stahl, Superior Court of Guam Case No. DM0842-10, Findings and Recommended Order (Apr. 15, 2013). In the Findings, the Referee sides with the conclusions of Lujan and Stahl, that § 34116.1 does not create a statute of limitations, and points out that this interpretation is supported by the statute's title, "Defense to Support if Income Different." Findings and Recommended Order 6. In general, the connection between the arrears provisions of § 34116.1 and the designated age of six in § 34105(b) is not fully explained in the court decisions. It is not clear that the legislature intended such a connection at all.

One referee found that the two statutes were "facially contradictory, their joint application absurd." Haddad at 5, 7. But this Court in reviewing that decision did not find that the two statutes "obviously contradict in a manner which necessitates repeal or the narrow interpretation applied by the Referee." Id. This Court went on to explain that § 34116.1 is a general provision and § 34105 is specific, and the general must yield to the specific. Other judges and referees of the Superior Court of Guam have found other ways to interpret § 34116.1 and § 34105(a) so that they avoid direct conflict. Various conflicts between the two statutes remain unresolved, including the issues that appear in the instant case. The Supreme Court has yet to weigh in.

## ANALYSIS

This Court admits that the interaction of § 34116.1 and § 34105 is strained, if not directly conflicting, and it is difficult to ascertain the legislature's vision for child support arrears based on those statutes. It comes as no surprise that judges and referees have wrestled with the two statutes and have not always reached the same conclusions. The Court acknowledges that Plaintiff's Objections lay out a fair interpretation of the literal meanings of the two statutes that seems to resolve the major conflicts between them. However, Plaintiff's interpretations create other serious problems and outcomes the legislature would not have intended. This includes outcomes that cannot stand under the weight of the Palomo decision, as will be explained. First, if the Court were to interpret § 34105 and § 34116.1 as Plaintiff has suggested, obligor parents would seek to delay permanent child support orders for as long as possible, because the longer the delay, the more money the obligor parent would save. Meanwhile, parents with physical custody could go years without receiving child support payments. This is because child support arrears post-complaint could only be ordered for a maximum of one year and only if there had never been a previous order, whether temporary or permanent. As explained earlier, Plaintiff has argued that if there is already a temporary order that did not also order arrears, arrears should no longer be available at all. Or, as Plaintiff conceded, arrears could be ordered for a maximum of one year. Either interpretation would incentivize obligor parents to seek to delay permanent orders knowing that child support arrears would either never be due or they would accumulate only for one year previous to the order. As the child approached the age of majority, each month that passed without an order would mean more money in the obligor parent's pocket. If the parent succeeded in delaying an order until the child was emancipated, he could potentially pay nothing at all, either in regular child support payments or in arrears.

Second, because of the circumstances just described, the courts would be reluctant to make temporary child support orders, leaving children and custodial parents without proper support. This is because if courts made a temporary support order without requiring arrears and with a low monthly payment, as occurred with the $200 order at the Oct. 20 Hearing, § 34116.1 would no longer apply under Plaintiff's interpretation. In order to immediately provide for the child, the court may well be inclined to make such a temporary order, as Referee Ingles did, in spite of a lack of available financial information to properly establish arrears and to make an appropriate prospective order. However, if § 34116.1 no longer applied after the temporary order was entered, then arrears would never be possible, except between the child's birth and the complaint, under Plaintiff's interpretation of § 34105. With a temporary order in place requiring a low monthly payment based on a quick decision by the judge, and with arrears no longer being an option, the obligor parent would seek to delay a permanent order, saving more money with each month that passed. In order to avoid such an outcome, courts would hesitate to set a temporary order at all. Instead, to preserve the possibility of an accurate order for arrears, courts would feel inclined to wait for accurate worksheets and financial information before making any order at all instead of making a quick and temporary bench decision. By avoiding making a temporary order, the court could preserve the possibility of arrears, though only one year's worth, under Plaintiff's interpretation of § 34116.1. Naturally, gathering and presenting that financial information takes time, so there could be a long period in which the parent with physical custody would receive zero support. The instant case is a good example of how it can take years to establish a permanent order based on accurate financial information, even when the obligor parent is apparently not seeking to delay the order.

As a result of Plaintiff's interpretation of the statutes, courts would be placed in one of two uncomfortable positions. The court could either take a guess as to an appropriate child

support amount based on no financial information, out of desire to get payments going as soon as possible, yet knowing that if arrears are not also ordered at that time, arrears can never be ordered again. Or the court could make no order until it received financial information, hoping to preserve the possibility of an accurate amount of arrears, yet knowing that it could be a years-long process to get the financial information, a period in which the parent with physical custody would receive no child support payments. In addition, the courts, out of an abundance of caution in their desire to look after the best interests of the child, may wish to enter temporary child support orders with an unusually high monthly payment, just in case, knowing that arrears are not available after a temporary order is made. This could produce unjust results for the obligor parent, encouraging further litigation and delay. These scenarios cannot be what the legislature had in mind, especially considering the policy articulated in § 34105(a) that there is public policy in favor of having parents support their children.

Plaintiff's interpretation of the statutes not only results in outcomes the legislature would not have intended, but it is also contrary to statements by the Supreme Court of Guam in the Palomo decision. That court stated, "We disagree with any interpretation of 5 GCA § 34105 that would create an incentive for men to avoid their obligations by delaying the determination of paternity and that would be contrary to the statutory purposes of providing for the child regardless of the circumstances of birth." Palomo at ¶ 42. Paternity is not at issue here, nor is child support between the child's birth and the commencement of the action, but the statement is nevertheless instructive in interpreting the instant case. That is because the instant case, just like Palomo, raises the significant issue of whether to create incentive for obligor parents to avoid their obligations. Plaintiff's interpretation of the statutes would create incentive to obligor parents to avoid their obligations and would be contrary to the statutory purposes of providing for the child, in direct conflict with the Palomo court's statement. This outcome does not align

with legislative policy or the Palomo decision and comes at the expense of the best interests of the child. As mentioned previously, the Palomo court repeatedly emphasized that a father's obligations of child support apply retroactively to the child's birth. This Court declines to interpret the statutes in such a way that a parent's obligation to provide child support ceases once an action has commenced. Instead the Court sides with the repeated statements and sentiment of the Palomo court that a parent has a persistent responsibility to provide for his child, and he cannot avoid arrears even if there is a delay in entering a child support order. In general, this Court declines to interpret the statutes in the ways that Plaintiff has suggested and overrules Plaintiff's Objections. Instead the Court affirms the Referee's decision to require arrears dating back to the child's birth, including the period between the commencement of the action and the Oct. 20 Hearing.

With regard to the period between the Oct. 20 Hearing and Oct. 2017, the Court differs with the Findings that concluded that Plaintiff owed no arrears during that period. Instead the Court finds that Plaintiff can be held responsible for arrears during that time. The Findings state that no party had moved to modify the child support amount until Oct. 2017, so the $200 monthly order held fast, and arrears did not accumulate during that time. The Findings base this conclusion on 5 GCA § 34121 which states, "The provisions of any order respecting maintenance or support may be modified only as to installments accruing subsequent to the motion for modification and only upon a showing of a substantial and material change of circumstances." 5 GCA § 34121. However, this Court does not accept the $200 monthly support order made at the Oct. 20 Hearing as an adjudication of child support that requires a motion to modify based on a showing of a substantial change in circumstances. Referee Ingles would not have required such a motion to modify the $200 monthly payment. Instead, she made the order based only on Plaintiff and Defendant's admission about what Plaintiff had been paying

voluntarily, knowing the order would shortly be adjusted. The amount was not based on financial documentation or worksheets, and the Referee made the order knowing and expecting that the order would be superseded within three weeks at a hearing that was already scheduled, without the need for a motion to modify the amount. Oct. 20, 2014 Hr'g. As such, this Court does not accept the $200 monthly order as anything other than an ephemeral stopgap that was supposed to have been almost immediately replaced by the court itself. The fact that it was not quickly replaced is not relevant to its relative unimportance. The order did not gain more value or earn increased deference with time. Consequently, the Court does not agree with the Findings which concluded that Plaintiff is not responsible for child support arrears between the Oct. 20 Hearing and Oct. 2017. Instead, the Court finds that Plaintiff is responsible to pay arrears from the time of the child's birth to the present day, receiving credit for the $200 per month payments or any other payments he has made.

The Court is aware that the period of Plaintiff's responsibility for child support arrears is now eleven and a half years, and the amount of arrears Defendant seeks has likely become unusually large. The Court reminds the parties of the statement in the Findings that under § 34116.1, Plaintiff may attempt to demonstrate that he did not always have the ability to pay the guideline amount. Regarding the guideline amount, the parties are not yet in agreement as to their respective incomes, so the court cannot yet set proper child support. Finally, the Court need not address the related topic of whether § 34116.1 creates a statute of limitations if the action was commenced after the child turned six because this child support action was commenced with the divorce filing, before the child turned six.

Regarding the AG's standing, this Court finds that the AG does have standing in this case. Although § 34105(a) does not appear to explicitly grant standing to the AG, if the Court sides with Plaintiff's interpretation, it creates the same problems that have been previously

discussed of incentivizing obligor parents to delay setting a child support order. The longer the period of time without an order, the longer the AG would have no standing under Plaintiff's interpretation, and the less the obligor parent would ultimately pay. As a result, it would be in the obligor parent's interest to seek to delay any order for as long as possible in order to prevent the AG from gaining standing. This result is in direct conflict with the policy stated in § 34105(a) that parents should provide for their children and with the Palomo court, which unequivocally refused to interpret § 34105 in such a way that it would reward obligor parents for causing delays that would reduce the child support they owe. Consequently, this Court finds that the AG does have standing to bring this action.

### CONCLUSION AND ORDER

For the above reasons, the Court **OVERRULES** Plaintiff's Objections and **FINDS** that Plaintiff is responsible for child support arrears for the period between the birth of R.M.W. (DOB 12/16/2007) and the present, with credit to Plaintiff for payments he has already made. The Court acknowledges that Plaintiff may contest the amount of arrears based on his ability to pay throughout the years. This decision is consistent with the Findings and Recommended Order, except that this decision also requires arrears to be paid for the period between the Oct. 20 Hearing and Oct. 2017, contrary to the Findings and Recommended Order. The issue of calculating the proper child support amount, including arrears, is remanded to the Referee.

SO ORDERED, this _29_ day of _April_ 2019.

_____
HONORABLE MICHAEL J. BORDALLO
Judge, Superior Court of Guam

SERVICE VIA COURT BOX
I acknowledge that a copy of the original hereto was placed in the court box of:
LUGAN
AG
Date: 4/29/19 Time: 3r
BARNOA
Deputy Clerk, Superior Court of Guam